IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **JAMES E. HOUCK** | * | |
| **Petitioner,** | * | |
| **v.** | * | **Case No.: GJH-17-903** |
| **STATE OF MARYLAND and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND** | * | |
| | * | |
| **Respondents.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>**MEMORANDUM OPINION**</u>

This matter is before the Court on Petitioner James E. Houck's *pro se* Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his 2013 conviction for first degree

sexual offense in the Circuit Court for Montgomery County, Maryland. ECF No. 1. Respondents

have filed an Answer seeking dismissal of the Petition on the grounds of procedural default and

for lack of merit. ECF No. 15. Houck filed a Reply. ECF No. 18. The case is ready for

disposition. Upon review, the Court finds no need for an evidentiary hearing. *See* Loc. R. 105.6

(D. Md.); *see also* Rule 8(a), Rules Governing Section 2254 Cases in the United States District

Courts; *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing

under 28 U.S.C. § 2254(e)(2)). For the following reasons, the Court will deny the Petition and

decline to issue a certificate of appealability.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Houck was arrested in 2004 after being linked by a DNA test to a 1995 rape at a home in

Rockville, Maryland. *Houck v. State*, No. GJH-15-3638 ("*Houck I*"), ECF No. 24-2 at 19–21.[1]

Houck was charged with first degree sexual offense, first degree rape, first degree burglary,

armed robbery, and two counts of attempted first degree sexual offense. ECF No. 15-1 at 1–2.

### A.  Plea Hearing

On August 24, 2011, Houck pleaded guilty to one count of first degree sexual offense.

ECF No. 15-1 at 15–16. During the plea colloquy, the State informed the Court that it understood

Houck was going to plead guilty to first degree sex offense, that it would defer to the court for

sentencing, and that "[t]he count that defendant is pleading to carries a possibility of a life

sentence but the guidelines for this first degree sex offense are 25 to 40 years." *Houck I*, ECF

No. 24-2 at 4-5. Defense counsel confirmed that this was also his understanding of the plea

agreement. *Id.* at 5. The State indicated that it understood the defense would be requesting drug

treatment for Houck which the State would oppose. *Id.* Defense counsel acknowledged "the state

would be opposing our request for drug treatment under the health general article but otherwise

would remain silent and defer." *Id.*

The Court proceeded to question Houck about his understanding of the plea agreement:

> THE COURT: All right, then the representation as I understand it is
> that you're here today to enter a plea of guilty to a sex offense in the
> first degree that carries **a maximum penalty of life in prison.** The
> guidelines in the case that the state has stated and [defense counsel] I
> think agrees are 25 to 40 years but that would be the **maximum
> penalty that the court could impose if the court were to find you
> guilty of this offense and that is life**, do you understand that?
>
> MR. HOUCK: Yes.
>
> THE COURT: But there is no other agreement with respect to the

---

[1] *Houck I* involved a previous § 2254 petition by Houck that was dismissed without prejudice on September 29, 2016 for lack of exhaustion. *See Houck I*, ECF No. 49.

sentence itself. **I could impose a sentence of life, or I could impose a sentence of life and suspend a portion of it—I could suspend, under the plea agreement**, I could suspend all of it and impose no execute [sic] of incarceration. The guidelines are 25-40 years; I could impose life suspend 25, suspend up to 40, do you understand that?

MR. HOUCK: Yes.

*Houck I*, ECF No. 24-2 at 9–10 (emphasis added).

The Circuit Court accepted Houck's guilty plea and set a sentencing date, which it subsequently postponed several times to accommodate Houck's efforts to cooperate in another criminal matter. ECF No. 15-4 at 3–4; ECF No. 15-1 at 16–19, 22–25.

On December 19, 2012, Houck appeared in the Circuit Court for sentencing and requested another postponement related to his cooperation. ECF No. 15-4 at 3–4, 7;[2] ECF No. 15-1 at 22. Sentencing was postponed; the Court, however, allowed the victim to provide an impact statement, because her poor health might preclude her return at a future date. ECF No. 15-4 at 9, 12, 13–14, 22; *Houck I*, ECF No. 24-5 at 2–3; ECF No. 35 at 30–35; ECF No. 36 at 93. The victim was 79 years old and suffered from multiple sclerosis. ECF No. 15-4 at 18, 20; *Houck I*, ECF No. 24-5. Before the victim addressed the Court, the following exchange took place:

ASSISTANT STATE'S ATTORNEY: Your Honor, we've proffered the victim who was present, in fact, in the well of the courtroom as we and she could not hear anything that was going on during our previous –

THE COURT: I apologize for that incident.

ASSISTANT STATE'S ATTORNEY: No, it's not your, Court's fault but that we, she would like to, you know, say at least some things to Your Honor today. She is concerned, as I said previously about, if she will be here for sentencing? She really wants to see the sentencing. She very much wants to see it over with. I've explained to her that it's just

---

[2] The cover page of transcript from the December 19, 2012 postponed sentencing hearing is dated December 19, 2013, an apparent typographical error. ECF No. 15-4; ECF No. 15-1 at 20–22.

not going to happen today. She would like to at least address the Court. You know, basically she's hedging her bets if she'll be here or not. She doesn't want to forfeit her right to say anything else at that time of sentencing if we ever get to sentencing, but she would at least like to address the Court for some elements of her allocution today.

THE COURT: Very well. Anybody have any –

PETITIONER'S COUNSEL: Just briefly. I don't want her to have, I understand she can. I don't want to have her necessarily repeating everything she's saying today again at sentencing. I don't –

THE COURT: Well, that's where I have the discretion and –

PETITIONER'S COUNSEL: I understand, Your Honor.

THE COURT: – if she want to repeat it 15 times, I'll be happy to listen to it.

PETITIONER'S COUNSEL: Very well, Your Honor.

THE COURT: Just like I will your client.

PETITIONER'S COUNSEL: I appreciate that, Your Honor.

THE COURT: I'm going to let everybody have an opportunity to be heard and if it's repetitive, I'll put it on my head that sometimes I don't remember things.

ECF No. 15-4 at 15–16. The Assistant State's Attorney posed questions to the victim about the offense.[3] The victim was not under oath. ECF No. 15-4 at 16–17. Due to her mobility problems, the victim was permitted to address the court from her seat. *Id*.

### B. Sentencing Hearing

---

[3] The questions asked were: (1) what is your name; (2) tell the judge where you were living when this happened back on January 7, 1995, and is that right over here in walking distance to the courthouse; (3) did you have back pain when this happened in 1995; (4) were you on a motorized wheelchair at the time; (4) is your friend with you in court today; (5) were you living alone at the time this occurred; (6) did you know Petitioner or had you seen him before; (7) what is your date of birth; (8) is there anything else you would like to tell the court about the impact of the attack on you; (8) did you know who it was when somebody knocked on your door; and (9) can you briefly tell the judge what happened in your own words. ECF No. 15-4 at 17–22.

Houck was sentenced on November 20, 2013. ECF No. 15-1 at 25. The defense presented

testimony and offered mitigation.[4] At the end of the hearing, the court sentenced Houck to life

imprisonment. *Houck I*, ECF No. 24-3 at 39. The remaining charges were dismissed. *Id.* at 42;

*Houck I*, ECF No. 24-1 at 25. The victim also spoke at the sentencing. She told the Court that the

incident caused her "a lifetime of fear. That something like that could happen to me again. So, I

never went out like I used to on my scooter to the stores or anything else." *Houck I*, ECF No. 24-

3 at 30. The victim stated, "I hope that you give him life, because I have had a life of fear." *Id.*

After sentencing, Petitioner signed a "Notice to the Defendant" form that advised him of his

post-conviction rights. *Houck I*, ECF No. 24-5 at 5.[5]

Houck did not file an application for leave to appeal the entry of his plea. *Houck I*, ECF

No. 24-1 at 25–26; *Houck I*, ECF No. 24-4 at 15. The judgment of conviction therefore became

final for the purpose of direct appeal on December 20, 2013. *See* Md. Rule 8-204 (requiring an

application for leave to appeal be filed within 30 days of the date of judgment).

### C. Post-Conviction Proceedings

On March 21, 2014, Houck filed a petition for state post-conviction relief in the Circuit

Court. *Houck I*, ECF No. 24-1 at 27; *Houck I*, ECF No. 24-4 at 1–5. Houck filed an amended

petition on August 14, 2014, *Houck I*, ECF No. 24-1 at 29; *Houck I*, ECF No. 24-4 at 6–13, and

an additional petition prepared by counsel on December 21, 2014, *Houck I*, ECF No. 24-1 at 31;

*Houck I*, ECF No. 24-4 at 14–35. On February 6, 2015 and April 22, 2015, the Circuit Court

conducted a post-conviction hearing at which Houck, his plea counsel, two assistant state's

---

[4] The Court observed that defense counsel had done an "outstanding job" representing his client throughout the case, and that Petitioner "could not have a better lawyer." *Houck I*, ECF No. 24-3 at 35.
[5] The form reads "Waived" next to paragraphs 4 (stating the right to file for a three-judge panel review) and 5 (stating the right to file for a modification, reduction, or to strike a sentence). *Houck I*, ECF No. 25-5 at 5-6.

attorneys who were involved in the plea and sentencing proceedings, and a victim witness coordinator testified. *Houck I*, ECF Nos. 35, 36.

At the hearings, Houck waived the allegations of error made in his March 2014 and August 2014 *pro se* post-conviction petitions for relief and proceeded on the grounds asserted in the December 21, 2014 petition by counsel. *Houck I*, ECF No. 24-5 at 6–7; ECF No. 35 at 6–7. That petition presented three claims: (1) the state breached the plea agreement by failing to remain silent at sentencing; (2) the guilty plea was not knowing and voluntary because Petitioner thought the upper end of the guideline range was forty years, not a life sentence; and (3) trial counsel was ineffective for: misadvising Houck about the sentencing guidelines, failing to notify him of his right to move to withdraw the plea, failing to properly advise him of his right to file an application for leave to appeal, and failing to object to the State's breach of the plea agreement. *Houck I*, ECF No. 24-4 at 15–16; *Houck I*, ECF No. 24-5 at 7.

On September 3, 2015, the Circuit Court denied the Petition for Post-Conviction Relief in a Statement of Reasons and Order. *Houck I*, ECF No. 24-5. The court rejected the Petition, finding Houck had waived his claims that the State breached the plea agreement and that the guilty plea was not knowing and voluntary, that those claims were otherwise without merit, and that counsel did not provide ineffective assistance. *Id.* Houck did not file an application for leave to appeal the denial of post-conviction relief. The Circuit Court's decision became final thirty days later on October 3, 2015. *See* Md. Rule 8-204.

On December 10, 2015, Houck filed a Motion to Reopen post-conviction proceedings, asking the Circuit Court to refile the September 3, 2015 ruling so that he could file an application for leave to appeal the denial of post-conviction relief. *Houck I*, ECF No. 24-1 at 34; *Houck I*,

ECF No. 24-6. The Court denied the motion on March 4, 2016. *Houck I*, ECF No. 24-1 at 36.

On March 17, 2016, Houck filed an Application for Leave to Appeal the denial of the Motion to Reopen. *Houck I*, ECF No. 24-1 at 37. On July 19, 2016, the Court of Special Appeals of Maryland granted the Application for Leave, vacated the Circuit Court's denial of the Motion to Reopen, and remanded the case. ECF No. 15-1 at 39. On remand, the Circuit Court on August 30, 2016 vacated its March 4, 2016 order and reissued its September 3, 2015 opinion and order denying post-conviction relief. ECF No. 15-1 at 40; ECF No. 15-2.

Houck then filed an Application for Leave to Appeal the denial of post-conviction relief, raising three questions: (1) whether the post-conviction court erred by determining he had waived his direct challenge to the entry of his guilty plea; (2) whether the post-conviction court erred by concluding the state was permitted to question the victim at sentencing; and (3) whether trial counsel provided ineffective assistance by failing to correctly calculate the sentencing guidelines and provide adequate advice. ECF No. 15-3 at 8. The Court of Special Appeals summarily denied the Application for Leave to Appeal on March 13, 2017. ECF No. 4-1 at 1–2.

### D. § 2254 Petitions

Houck filed the § 2254 Petition at issue in *Houck I* on November 9, 2015. *Houck I*, ECF No. 1. It was dismissed for lack of exhaustion on September 29, 2016. *Houck I*, ECF No. 49. Houck then filed this § 2254 Petition on April 4, 2017, presenting claims of ineffective assistance of counsel for: (1) failing to file an application for leave to appeal the entry of the guilty plea or advise Houck on grounds for seeking leave to appeal; (2) failing to object when the state breached the plea agreement by failing to remain silent, or to advise Houck that it could be a basis to apply for leave to appeal; (3) failing to properly advise Houck about his sentence and

7

alert him that issues with the guideline range could enable a challenge to the voluntariness of his plea. ECF No. 1 at 6–10. Houck also claims that his sentence exceeded the plea agreement. ECF No. 10 at 1–2, 4, 11; ECF No. 11 at 2–4; ECF No. 13. Without leave of the Court, Houck has filed several "supplements" to the Petition, largely repeating the claims in the Petition. *See* ECF Nos. 4, 7, 10, 11, 14.[6] Respondent filed an answer on June 7, 2017. ECF No. 15.

On July 18, 2018, Houck filed an interlocutory appeal of this Court's Order denying motions for appointment of counsel, to correct his sentence, and for a preliminary hearing. ECF No. 20. The U.S. Court of Appeals for the Fourth Circuit ruled that the Court's Order was neither a final order nor an appealable interlocutory or collateral order, and accordingly dismissed the appeal for lack of jurisdiction on September 28, 2017. *See* ECF Nos. 23-1, 23-2, 25, 28. The Court now considers the merits of the pending Petition.

## II.    STANDARD OF REVIEW

The federal habeas statute provides that a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### A.  Analytical Framework

The federal habeas statute provides a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S.

---

[6] Both the Petition and the supplements assert claims that were not presented in state court, including that Houck (1) was not shown the victim's hospital record, ECF No. 1 at 7, and that (2) trial counsel failed to challenge the process through which the victim identified him, ECF No. 14 at 2. Because these claims were not asserted in state court, they are procedurally defaulted. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). Houck provides no cause to excuse the procedural default. Moreover, Houck alleges no constitutional or federal statutory violation regarding these claims.

447, 455 (2005). The standard is "difficult to meet," *Cullen v. Pinholster*, 563 U.S. 170, 181

(2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)), and requires courts to give state

court decisions "the benefit of the doubt," *id.* (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24

(2002) (per curiam)). A federal court may not grant a writ of habeas corpus unless the state

court's adjudication on the merits: "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States; or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d).

   A state court's decision is contrary to established federal law under § 2254(d)(1) when

the state court has arrived at a conclusion opposite to that reached by the Supreme Court on a

question of law, or confronted facts that are "materially indistinguishable from a relevant

Supreme Court" decision but on which the court arrived at the opposite result. *Williams v.*

*Taylor,* 529 U.S. 362, 405 (2000); *see Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005); *Barnes*

*v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014). A federal court "may not issue the writ simply

because [the] court concludes in its independent judgment that the relevant state-court decision

applied established federal law erroneously or incorrectly." *Lovitt,* 403 F.3d at 178 (quoting

*Williams*, 529 U.S. at 411). The state court's application of federal law must be unreasonable, not

merely incorrect. *Id.*; *see Barnes*, 751 F.3d at 238–39. Under the "unreasonable application"

analysis, a "state court's determination that a claim lacks merit precludes federal habeas relief so

long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

*Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

9

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if [r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Id.* (first and third alterations in original) (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)). Further, "a determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* (quoting *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003)).

## B.  Ineffective Assistance of Counsel

The Sixth Amendment confers the right to "the effective assistance of counsel." *Garza v. Idaho*, 139 S. Ct. 738, 743–44 (2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). Challenges to the effectiveness of criminal counsel are reviewed under the two-part standard set forth in *Strickland v. Washington*, which requires that a petitioner "prove (1) 'that counsel's representation fell below an objective standard of reasonableness,' and (2) that any such deficiency was 'prejudicial to the defense.'" *Id.* (quoting *Strickland*, 466 U.S. at 687–88, 692). *Strickland* requires the Court to consider whether there was "a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694. A petitioner must overcome a "'strong presumption' that counsel's

strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v.*

*Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 at 689). "A fair assessment

of attorney performance requires that every effort be made to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

 "To establish prejudice under *Strickland*, a petitioner 'must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome.'" *Jones v. Clarke*, 783 F.3d 987, 992 (4th Cir. 2015) (quoting

*Strickland*, 466 U.S. at 694). "The benchmark for judging any claim of ineffectiveness must be

whether counsel's conduct so undermined the proper functioning of the adversarial process that

the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at

686. "In cases where a defendant complains that ineffective assistance led him to accept a plea

offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability

that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going

to trial.'" *Missouri v. Frye*, 566 U.S. 134, 148 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59

(1985)). A determination need not be made regarding the attorney's performance if it is clear that

no prejudice would have resulted had the attorney not been deficient. *Strickland*, 466 U.S. at 697.

 "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,'"

*Harrington*, 562 U.S. at 105 (quoting *Strickland*, 446 U.S. at 689), "and when the two apply in

tandem, review is 'doubly' so," *id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

"When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The

question is whether there is any reasonable argument that counsel satisfied *Strickland*'s

deferential standard." *Id*.

## III.   DISCUSSION

A federal habeas court looks to the last reasoned decision on the merits of the claims at

issue. *See Brumfield v. Cain*, 135 S. Ct. 2269, 2276 (2015) (applying the "look through" doctrine

to review a state trial court's reasoned decision denying a claim on the merits because the state

appellate court summarily denied a petition for review); *Ylst v. Nunnemaker*, 501 U.S. 797, 803

(1991) (establishing a presumption that "[w]here there has been one reasoned state judgment

rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same

claim rest upon the same ground"). Here, the last reasoned claim on the merits was issued by the

post-conviction court in the September 3, 2015, Statement of Reasons. *Houck I*, ECF No. 24-5.

### A.  State's failure to remain silent at sentencing and voluntariness of the guilty plea

The state court explained that under Maryland law, an allegation of error is waived when

a convicted person "could have made but intelligently and knowingly failed to make the

allegation of error … in an application for leave to appeal a conviction based on a guilty plea."

*Houck I*, ECF No. 24-5 at 7 (quoting Md. Code Ann., Crim. Proc. § 7-106(b)(1)(i)(4)). The

Maryland Uniform Post-Conviction Procedure Act (UPCPA) establishes a rebuttable

presumption that a petitioner "intelligently and knowingly failed to make the allegation" when he

failed to file an application for leave to appeal. *See id.* at 8 (quoting Md. Code Ann., Crim. Proc.

§ 7-106(b)(2)). The UPCPA provides that "failure to make an allegation of error shall be excused

if special circumstances exist." *Id.* The burden is on a petitioner to show special circumstances.

*Id.* at 8 (citing Md. Code Ann., Crim. Proc. § 7-106(b)(1)(ii)(2)).

> In rejecting Houck's post-conviction claims, the Court stated:

> In the case at bar, the advice of Petitioner's post-conviction rights was not made on the record. However, as evidenced by the signed Advice of Rights form, located at Docket Entry 168, Petitioner was aware of his post-conviction rights, having signed the form following his sentencing in open court.[7] Petitioner offered no acceptable explanation to justify his inaction in filing an application for leave to appeal his conviction. In his Petition, Petitioner claims that he "was unaware as to the legal requirements of a voluntary plea, was incapable of filing his own application for leave to appeal, and was completely unaware that he had grounds to do so." *Id.* at 17. Petitioner still signed the Advice of Rights form, which clearly explains all of Petitioner's post-conviction rights.

> . . .

> In this case, Petitioner argues "his limited mental abilities, complete and total reliance on counsel … and counsel's failure to properly advise Petitioner regarding viable issues that could have been raised in an application for leave to appeal … should also constitute special circumstances to excuse any waiver." Supplemental Petition at 17. The UPCPA places the burden on the Petitioner to establish "special circumstances," and as discussed *infra,* this Court is not persuaded that Petitioner's Counsel was ineffective or in any way improperly advised Petitioner.

*Houck I*, ECF No. 24-5 at 11–12.

The court continued that even if special circumstances had been shown to excuse waiver,

the State did not breach the plea agreement. The court found that the state had followed the terms

of the plea agreement to "remain silent and defer" at sentencing. *Id.* at 12, 14–15. The Maryland

Declaration of Rights, the court explained, guarantees crime victims the right to be "notified of,

to attend, and to be heard at a criminal proceeding." *Id.* at 13 (quoting Md. Const. art. 47).

Further, the court noted, "the State and the victim are separate entities with independent rights,"

---

[7] Houck testified at the post-conviction hearing on April 22, 2015 that his plea counsel reviewed the form with him. *Houck I*, ECF No. 36 at 46.

and thus "[t]he State cannot waive or forfeit a crime victim's rights by entering into a plea

agreement with a criminal defendant." *Id.* (citing *Lindsey v. State*, 98 A.3d 340, 350 (Md. App.

2014), *rev'd on other grounds sub nom. Griffin v. Lindsey*, 119 A.3d 753 (Md. 2015)).

Moreover, the court found the record "devoid of any actions taken by the government to

argue for any sentence, much less the one the Court imposed in this case." *Id*. at 13–14. On these

facts, the court determined that "a reasonable person in [Houck's] position at the time of the plea

agreement would not have understood the State's agreement to 'remain silent and defer' to limit,

or inhibit, in any way, the victim's Constitutional rights." *Id*. at 14.

As to whether the plea was entered knowingly and voluntarily, the court concluded that

even if Houck's allegation of error in this regard had not been waived, he would not be entitled

to relief because "it is clear from the record the Court advised Petitioner he could be sentenced to

life in prison; the maximum possible sentence." *Id.* at 15. Reviewing the transcript from Houck's

plea hearing, which reflects that Houck responded affirmatively when asked by the court whether

he understood that first degree sexual offense has a maximum sentence of life, the post-

conviction court stated:

> The Petitioner's own words confirm his actual knowledge at the time of his plea
> agreement and through to sentencing that a life sentence was possible and
> remained so under the terms of the negotiated plea agreement. The Petitioner
> entered his guilty plea in an attempt to avoid this possibility; however the
> possibility became his reality when the Court imposed its sentence. Likewise, it
> was no secret that the delay between Petitioner's plea and sentencing was due, in
> part, to Petitioner's hope that any favorable testimony or assistance he could
> provide to the State in another prosecution would benefit him at sentencing for
> these crimes. The Sentencing Judge simply disagreed with Petitioner's views,
> hopes and desires.

14

*Houck I*, ECF No. 24-5 at 16.[8]

After reviewing the parties' submissions, the transcripts, and the exhibits, the Court finds

that the record amply supports the state court's determination. Houck has not met his burden to

show that the state's adjudication on the merits "resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established federal law, as determined by the

Supreme Court of the United States," or "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d). Notably, as the Fourth Circuit has explained, while "each

party should receive the benefit of its bargain" in a plea agreement, courts will not hold the

government to promises "that it did not actually make in the plea agreement, for neither party is

obligated to provide more than is specified in the agreement itself." *United States v. Obey*, 790

F.3d 545, 547 (4th Cir. 2015) (quoting *United States v. Dawson*, 587 F.3d 640, 645 (4th Cir.

2009)).

Generally, the validity of a guilty plea turns on "whether the plea represents a voluntary

and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474

U.S. at 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see also Boykin v.

Alabama*, 395 U.S. 238, 242–43 (1969). The state court's determination here was consistent with

this principle. Houck was advised during the plea colloquy that he could be sentenced to life in

prison. While the prospect of avoiding a life sentence may have motivated him to enter his guilty

plea, the record plainly shows that he was informed that he faced a possible maximum life

---

[8] Houck also acknowledged in his testimony before the post-conviction court that he understood when he pleaded guilty that the offense carried a maximum of a life sentence and that no promises were made to him otherwise. *Houck I*, ECF No. 36 at 13, 33, 39.

sentence. Accordingly, any claims Houck asserts regarding the State's alleged violation of the

plea agreement and the voluntariness of Houck's guilty plea provide no cause to grant federal

habeas relief.

### B. Ineffective Assistance of Counsel

In rejecting Houck's ineffective assistance claim, the state court first reiterated that

Houck was advised by the court of the possibility of a life sentence before he entered the plea.

*Houck I*, ECF No. 24-5 at 19–20. The court explained its reasoning:

> Both Petitioner's Counsel and the State made a mistake in calculating the
> guideline range; clarified by the Court before sentencing. Neither Petitioner's
> Counsel nor the Court made assurances or promises to Petitioner regarding
> sentencing. Petitioner acknowledges knowing that a stiffer sentence than the
> one he "hoped for" was within the realm of possibilities and was within the
> Court's judgment. Therefore, there was no "incomplete or misleading
> information with regard" to the plea agreement when trial counsel
> miscalculated the guideline range because he advised Petitioner a life sentence
> was possible. *See Williams*, 326 Md. at 378.[9] Again, Petitioner acknowledged
> he understood a life sentence was possible. *See* Tr. 8/24/2011 at 9-10.

Houck, ECF No. 24-5 at 20. Thus, the court held that "[t]he record is clear Petitioner was

advised a life sentence was possible." Accordingly, the court concluded that Houck had failed

"to demonstrate that the miscalculation of the guideline range was not 'reasonably competent

under 'prevailing professional norms,' or that it amounts to deficient performance." *Id.* (quoting

*Cirincione v. State*, 705 A.2d 96, 102 (Md. App. 1998)).

Next, the court rejected claims that Houck's counsel was deficient for failing to advise

Houck to withdraw the plea based on the miscalculation or a breach of the plea. *Id.* The court

---

[9] In *Williams v. State*, 605 A.3d 103, 108 (Md. 1992), a post-conviction petitioner was not informed by his counsel
of a mandatory sentence of twenty-five years before rejecting a plea offer with a maximum of ten years. The Court
of Appeals stated that a "trial attorney performs deficiently" when "while disclosing the plea offer, [the attorney]
provides the defendant with incomplete or misleading information with regard to the offer." *Id.* at 378.

attributed counsel's omission to legal strategy, noting that Houck had sought a plea agreement in an attempt to lessen his chance of receiving a life sentence. *Id.* "While this Court does not need to identify the exact rationale, for the failure to advise his client about withdrawing his plea," the court explained, it found it "possible that Petitioner's counsel did not consider the State to be in breach of the plea agreement and, given Petitioner's stated goals, Petitioner's counsel considered the miscalculation unsubstantial." *Id.* at 20–21 (internal quotation marks omitted). "*Strickland* places the burden on Petitioner 'to show that trial counsel's actions were unreasonable'" and he failed to do so," the court found. *Id.* at 21. (quoting *Strickland*, 466 U.S. at 688).

The court found that Houck's counsel's failure to object when the victim spoke at sentencing was also based on legal strategy and did not amount to deficient performance. "This Court does not 'need to identify the exact rationale,' for Petitioner's Counsel's lack of objection, but it is not only possible, but highly probable, given Petitioner's Counsel's comments to the Court at the December 12, 2012 hearing, that Petitioner's Counsel was aware of the Maryland Declaration of Rights and other statutory protections for crime victims." *Id*. at 21. The court observed that counsel had expressed reservations about the victim's testimony at the December 19, 2012 hearing, but was overruled by the court, which may have factored into counsel's decision not to object to Petitioner's comments at the final sentencing. *Id.* Having concluded that a "reasonable strategic purpose" could be ascribed to counsel's omission, the court found the claim was without merit. *Id.* (quoting *Bowers v. State*, 578 A.2d 734, 740 (Md. 1990)).

The court next determined that because there was no merit to the claims that the state had breached the plea agreement or that the plea was involuntary, counsel's purported failure to advise Petitioner about filing an application for leave to appeal may have also represented

17

considerations of legal strategy, and that a charge of ineffective assistance on that basis was in

any case without merit. *See id.* at 21–22. "To think of this allegation otherwise would be to

consider the 'distorting effects of hindsight' which this Court is called upon to eliminate in its

assessment of Petitioner's counsel's performance" under *Strickland*, the court explained. *Id.* at

22. On these bases, the state court concluded Houck had not met his burden to show counsel's

performance was constitutionally deficient.

The state court also concluded that Houck failed to satisfy the second prong of

*Strickland*, stating that "Petitioner most assuredly knew that a life sentence was a realistic

possibility. The miscalculation of guidelines was thus "'not significant enough to undermine

confidence' in Petitioner's plea agreement." *Id.* at 23 (quoting *Cirincione*, 705 A.2d at 111). The

court explained its reasoning as follows:

> Petitioner states, had he "known that his guideline range would suggest the
> possibility of a life sentence he would have gone to trial, or at the very least,
> sought a more favorable plea agreement from the State." Supplemental Petition
> at 19. However, this plea was without a cap on the executed portion of prison
> time, and the State remaining silent at sentencing; Clearly, not a scenario that
> was likely to improve in further negotiations or trial. Petitioner argues the
> miscalculation "actually had an adverse effect" on his decision to accept the
> plea. *Strickland,* 466 U.S. at 693. The record is clear the Court informed
> Petitioner during the plea colloquy that, regardless of the guideline range, it
> could impose a life sentence and Petitioner responded that he understood. Tr.
> 8/24/11 at 9-10. Additionally, Petitioner, by his own admission, in the Post-
> Conviction Hearing, specifically and strategically sought a plea agreement so
> as to hopefully lessen his chance of a life sentence, again recognizing that a life
> sentence was a real possibility for his criminal conduct. Supplemental Petition
> at 16. Clearly, this was Petitioner's hope, not a result that was promised to him.

*Id*. at 23. The court made conclusions on the prejudice prong of *Strickland* in light of this record:

> Considering all of the evidence presented in these proceedings, this Court is
> not persuaded that trial counsel's omissions prejudiced Petitioner. As discussed
> *supra*, the State did follow the terms of the plea agreement. Likewise, the
> record is devoid of any evidence that Petitioner entered an involuntary plea or

18

> withdrawal of the plea agreement was appropriate alternative [sic], under all the circumstances. Petitioner was not prejudiced because there is no indication that trial counsel's objection would have affected the outcome, and there were no meritorious grounds to file an application of leave to appeal or to withdraw the plea.

*Id.* at 24. In sum, the court explained,

> Petitioner got what he bargained for under the plea agreement; to wit: a lessened (but, assuredly, not guaranteed) chance of a life sentence. Further, the State did not breach the agreement. The record clearly indicates a knowing, intelligent, and voluntary plea by Petitioner. Following the prongs of *Strickland*, there is no indication that, if any prejudice existed, Petitioner would have elected to proceed to trial and not a guilty plea. Therefore, this Court is not persuaded that Petitioner's counsel's acts and omissions cumulatively "so undermined the proper functioning of the adversarial process" the plea "cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

*Id.* at 25.

Given the highly deferential standard of review that applies to ineffective assistance claims on habeas review, this Court finds that the state court's thorough and careful rejection of Houck's ineffective assistance claims was neither "contrary to," nor "involved, an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," nor was it "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The post-conviction ruling thus survives scrutiny, and Houck's claims of ineffective assistance of counsel do not warrant federal habeas relief.

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a habeas petitioner must make a "substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Buck v. Davis*, 137 S. Ct. 759, 773 (2017); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects constitutional claims on the merits, a petitioner satisfies this standard by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). The Court concludes that Houck has not made the requisite showing here. Therefore, the Court declines to issue a certificate of appealability. Houck may request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

## V.    CONCLUSION

For the foregoing reasons, the Petition, ECF No. 1, is denied. A separate Order will follow.

Date: <u>November    27, 2019</u>                    __/s/_____
                                                                         GEORGE J. HAZEL
                                                                         United States District Judge